```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

|  |  |
|---|---|
| Jon A. Chump, | )<br>)<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. 06-1378<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | ) JUDGE TERRENCE F. MCVERRY<br>) MAGISTRATE JUDGE CAIAZZA<br>)<br>)<br>) |
| Defendant. | )<br>) |

### REPORT AND RECOMMENDATION

#### I. RECOMMENDATION

Acting pursuant to 42 U.S.C. § 405(g), Jon A. Chump ("Chump" or "the claimant") appeals from a August 10, 2006, final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance and supplemental security income benefits . Cross-motions for summary judgment are pending. It is respectfully recommended that the Commissioner's Motion be granted, and that the Claimant's Motion be denied.

#### II. REPORT

##### A. BACKGROUND

On March 16, 2005, Chump filed his second application for

disability insurance benefits[1] and supplemental security income. At the time of the hearing, Chump was a fifty-three year old divorcee with a GED who, until his parents' death in 2002, had been quite successful in sales, winning awards as a timeshare salesman. Since 2002, Chump performed maintenance at a mobile home park and supported himself with other odd jobs. He claimed to have been disabled since December 15, 2004 as a result of depression, anxiety, and Hepatitis C. The Commissioner denied the application on June 2, 2005, and Chump requested a hearing.

On March 26, 2006, a hearing took place before an administrative law judge ("ALJ") in Latrobe, Pennsylvania. Chump, who was represented by counsel, and a vocational expert testified. Chump testified that he suffered from severe panic and anxiety attacks, and that medication he had taken for these disorders in the past made him sleepy, agitated, or caused him to see things. (Doc. 8-9 at 26). His current medications, Celexa and Atarax, made the problems "half-way tolerable." Id. He also testified to severe problems with anger. Id. at 21. These difficulties made it impossible for him to work for any length of time. Jobs that would have been easy for him before had become impossible Id. At 22-23.

When questioned by the ALJ regarding his daily activities,

---

[1]Chump filed a similar application in 2004, but abandoned the claim.

Chump testified that "when he felt like it" he could bathe and dress himself. He loved to cook, and could still drive about fifty miles per week with a friend in the car. <u>Id.</u> at 27-28. "When he felt like it", he could dust, sweep with a broom, mop for himself and a friend, wash dishes, vacuum, do laundry, take out trash, and grocery shop as long as there weren't too many people around. He cut his grass on occasion, watched television, and visited motorcycle web sites on his computer. <u>Id.</u> at 28-30. He did not belong to clubs or organizations, and had not eaten in a restaurant for months. He visited a close friend almost daily, and had visitors in his home once or twice a month. <u>Id.</u> 30-31. He enjoyed working on his motorcycle because it was something that he could do at his own pace. He walked and cut wood with a friend about once a week. In 2004 he drove to Nashville to see his sister, although the trip was frightening for him and required many stops. <u>Id.</u> at 32-33.

    During questioning by his attorney, Chump testified that he had extreme difficulty leaving his home. The slightest incident could bring on a panic attack. <u>Id</u>. at 34. During these attacks, he could "grab somebody by the head." <u>Id.</u> at 35. He felt as though he had fallen "though into a hole" and didn't know how to get out. <u>Id.</u> at 37. He felt depressed and had thoughts of suicide. Id. at 39.

Based on evidence adduced at the hearing and supporting medical records the ALJ denied Chump's claim, concluding that he retained the residual functional capacity to perform work at all exertional levels with the following non-exertional limitations: "[The claimant] must avoid unprotected heights and climbing ladders, ropes, and scaffolds, is limited to occasional interaction with supervisors and must avoid verbal communication with coworkers and the general public, and is limited to simple, routine and repetitive tasks not performed in a production or quota-based environment involving only simple, work-related decisions and few workplace changes." (Doc. 8-1 at 20). Relying on answers to hypothetical questions posed to the vocational expert, the ALJ found that work consistent with Chump's residual functional capacity was available in substantial numbers in the national and local economies.

Chump requested review of the ALJ's decision and, on August 10, 2006, the Appeals Council affirmed the findings of the ALJ, making the ALJ's decision the final decision of the Commissioner. This timely appeal followed.

### D. THE ALJ'S DECISION

The ALJ arrived at his finding that Chump was not disabled

within the meaning of the Social Security Act ("the Act") by applying the sequential five step analysis articulated at 20 C.F.R. §404.1520(a) and 416.1920(a).[2] He resolved this matter at Step 5.

The ALJ first considered the severity of Chump's impairments. The ALJ concluded that Chump did not suffer from a severe physical impairment although he had been diagnosed with Hepatitis C. The ALJ summarized the relevant medical evidence, noting that the progress notes and liver function tests did not support a finding that the claimant experienced severe symptoms as a result of Hepatitis. Id. at 19. "In addition, the claimant did not testify to any symptoms as a result of hepatitis." Id.

The ALJ found that Chump did suffer from severe mental impairments comprised of the following: depressive disorder, anxiety disorder, alcohol dependence, and marijuana dependence. (Doc. 8-1 at 18). In his initial comments on these disorders, the

---

[2]The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, she is not disabled; (2) If the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; (5) Even if the claimant's impairment or impairments prevent her from performing her past work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

ALJ cited progress notes demonstrating that the claimant "does not consume substantial amounts of alcohol or marijuana," and observed that he had never been referred for drug and alcohol treatment. Id. at 20. Chump had received "ongoing mental health treatment from a certified registered nurse practitioner and a licensed social worker for" depression and anxiety. Id.

The ALJ next evaluated Chump's mental impairments in terms of their impact on his ability to "perform the activities of daily living, function in a social setting, concentrate, persist and maintain pace at work-related job tasks, and whether the claimant had experienced any episodes of decompensation of an extended duration." Id. Based on the fact that Chump described a wide range of daily activities at his hearing and the absence of progress note references to significant problems with daily living, the ALJ characterized Chump's limitations in this area as "mild." Id. Limitations on his ability to function socially were, however, deemed "moderate." The record included Chump's 2005 allegations of problems with anger and getting along with people in authority. He had difficulty with criticism and avoided the public due to his feelings of despair. The ALJ wrote: "Some progress notes state the claimant isolates himself, avoids others and has issues with anger management but the . . . notes generally state [that he] has been pleasant and cooperative with normal conversation and good eye contact." Id. Chump's

description of his daily activities did not suggest that he was having difficulty functioning outside of his home, and he was "able to communicate and interact effectively and appropriately at the hearing" without displaying overt anxiousness or anxiety. Id.

The ALJ also characterized as "moderate" Chump's limitations with respect to persistence, pace, and concentration. The treatment records did reflect Chump's complaints of concentration difficulties. Mental status examinations were, however, normal, and Chump was able to testify without lapses in attention or concentration. Based on the record evidence, the ALJ determined that Chump's work should be limited to simple repetitive and routine tasks not involving production or quotas, and that he should be exposed to few workplace changes. Id. The ALJ found that Chump did not meet the criteria for any other listed impairment.

In arriving at his conclusion regarding Chump's residual functional capacity, the ALJ found Chump's testimony to be only partially credible. He noted that Chump's description of his difficulties was not supported by the clinical and objective findings of record, the treatment notes, his activities of daily living, or by evidence relating to his medicine and its side effects. A state agency medical consultant expressed the opinion that Chump was equal to the demands of work-related activities.

Because the information relating to Chump's past work was unclear, the ALJ found that he did not have past relevant work experience. Consequently, the ALJ called a vocational expert to testify, and posed questions regarding a hypothetical person with Chump's vocational profile. The expert testified that given the residual functional capacity defined by the ALJ, Chump would be able to perform a number of jobs available in significant numbers in the national economy.

Based on his application of the law and the testimony of the vocational expert, the ALJ concluded that Chump was not under a disability within the meaning of the Social Security Act, and was not, therefore, entitled to benefits.

### E. **STANDARD OF REVIEW**

The Act limits judicial review of the Commissioner's final decision regarding benefits to whether the factual findings are supported by substantial evidence, Brown v. Brown, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

### F. **ALLEGATIONS OF ERROR**

#### 1. **Failure to Consider the Report of Psychologist Saxman**

Chump contends that the ALJ erred in failing to accord appropriate weight to the report of Chump's "treating"

psychologist, Peter Saxman.[3] In his June 15, 2006 notes regarding Chump's evaluation, Saxman concluded: "Jon has a marked impairment to his ability to understand, remember and carry out short simple instructions, detailed instructions, and to make judgments on simple work-related decisions." (Doc. 8-9 at 1). Citing Chump's "major depression, panic with agoraphobia and Hepatitis C," Saxon also wrote: "Jon has a marked impairment to his ability to interact appropriately with the public, supervisors, coworkers, work pressures and changes in a routine."Id.

Chump's argument ignores entirely the fact that Saxman's report was not conducted until well after the ALJ issued his decision denying benefits. The hearing transcript shows that the record was closed at the conclusion of the testimony, and that the ALJ stated clearly that the parties would be notified if the record were reopened for any reason.(Doc. 8-9 at 51). The ALJ did not reopen the record. Chump offers no explanation for his argument that the ALJ failed to consider evidence that did not exist at the time of the hearing or before the decision. He also fails to address the fact that Saxman's report was submitted to

---

[3]Chump mischaracterizes the nature of his relationship with Dr. Saxman, describing him as a "treating" psychologist. Instead, Saxman's report makes clear that he conducted a one-time evaluation that was not based on any treatment or other medical records, but only on Chump's account of his condition.

and considered by the Appeals Council reviewing the ALJ's decision. The Appeals Council concluded that the late-generated information "[did] not provide a basis for changing the Administrative Law Judge's decision." (Doc. 8-1 at 2). In other words, the report was not material.

Section 405(g) establishes that in order to warrant a remand based on "new evidence" the evidence must be "material."[4] The materiality standard is not met absent a possibility that the new evidence would have altered the outcome of the Secretary's determination. See Reefer v. Barnhart, 326 F.3d 376, 381 n.3. (3d. Cir. 2003). The Appeals Council has already made the materiality determination. The court does not find and Chump fails to suggest any reason to disturb that finding.

In Saxman's opinion, Chump's ability to function in the workplace was compromised to a degree not consistently

---

[4]Three requirements must be satisfied before a court will order a remand pursuant to 42 U.S.C. § 405(g). According to the rule a claimant must show "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." First, the information must, in fact, be "new" in the sense that it is not cumulative. Szubak v. Sec'y Health and Human Servs. 745 F.2d 831, 833 (3d Cir. 1984); Pieczynski v. Barnhart, 430 F. Supp.2d 503, 509(W.D. Pa. 2006). Second, the information must be "material", i.e. relevant and probative enough to suggest a "reasonable possiblity" that the ALJ's decision would have been different had he considered it. Szubak, 745 F.2d at 833. Third, the claimant must explain why the proffered evidence was not produced in time for consideration for the ALJ. Counsel for Chump has not offered any explanation for her failure to secure a psychological examination of her client prior to the administrative hearing, or for her failure to make the ALJ aware that she had scheduled or planned to schedule such an examination.

substantiated by the other examining psychologists or mental health professionals participating in Chump's treatment. Having reviewed every item of evidence in the record, and the record as a whole, the court finds that there is ample evidence to support the finding of the ALJ and it, like the Appeals Council, does not find any basis upon which to conclude that there is a "reasonable possibility" that the ALJ's decision would have been changed by the Saxman report. <u>Newhouse v. Heckler</u>, 753 F. 2d 283, 287 (3d Cir. 1985); <u>Szubak v. Health & Human Services</u>, 745 F.2d at 833). The "new evidence" cited by the claimant does not, therefore, necessitate remand.

**2. The ALJ Erred in Determining the Degree of Chump's Limitations**

Chump next contends that the ALJ erred in finding that he is only mildly limited in daily living, moderately limited in social functioning, and moderately limited in maintaining concentration, persistence, or pace. This argument is based on the assertion that "Dr. Saxman and the VA medical professionals have concluded that [Chump] is disabled with marked limitations." (Doc. 10 at 18). As the court has already explained, Dr. Saxman's report was never submitted to the ALJ and the Appeals Council has determined that remand was not necessary because the report was not "material".

The remainder of the record evidence regarding Chump's

11

ability to function is sufficient to satisfy the applicable "substantial evidence" standard. Although, as Chump points out, he was assigned a GAF score of 45-50 on November 5, 2005 and was reported to have suicidal ideation, on many other occasions, his score was in the 55-60 range, and he was free of suicidal ideation. ( E.g., Doc. 8-7 at 12, 13). Furthermore, on November 23, 2005, just eighteen days from the report cited by Chump, a state agency consultant concluded that Chump suffered from moderate restrictions in his activities of daily living, and had moderate difficulty maintaining social function, and in maintaining concentration, persistence or pace.

The record evidence, including Chumps's own testimony regarding his ability to carry out a wide-range of activities, is more than adequate to support the ALJ's assessment of the limitations imposed by Chump's mental impairments.

### 3. **The ALJ Erred in Finding Chump Only Partially Credible**

According to Chump, the ALJ failed to point to evidence in the record to support his finding that Chump's account of his impairments and their severity was only partially credible. This allegation of error is essentially a recasting of Chumps previous argument, and does not merit extended discussion.

Contrary to Chump's allegation, the ALJ did address - with ample record references - evidence supporting his conclusion that

Chump's impairments were not severe enough to prevent him from working. The court will not revisit the ALJ's discussion. It does reiterate, however, that it has independently and carefully reviewed the record, and finds that there is substantial evidence to support the ALJ's credibility determination.[5]

### III. **CONCLUSION**

Because the decision of the ALJ is supported by the evidence

---

[5]There is no medical evidence - and Chump does not point to any - suggesting that his diagnosis of Hepatitis C has had any impact on his ability to function. In a Residual Functional Capacity Evaluation conducted on May 23, 2005, the adjudicator wrote: "[Chump] never received treatment for his Hepatitis C. The office notes reflect numerous occasions on which he did not specify any particular complaint, which contrasts with the current allegations of ongoing symptoms. Although the claimant alleges significant limitations, the field office personnel observed him to have no difficulties . . . The claimant's statements are found to be partially credible." (Doc. 8-3 at 23)

There is also evidence to suggest that Chump's symptoms of mental impairment were not as severe as his testimony indicated. For example, on January 9, 2006, Chump had his twelfth visit with social worker Patrick Cassidy. Cassidy wrote that although Chump presented with a depressed mood and variable affect, he was generally pleasant and conversive and was appropriately dressed. He displayed no cognitive defects and reported that his medications - Celexa and Atarax - seemed to be keeping his impulses in check. He had not had any episodes involving temper. He had been trying to increase his social activity and felt that he was doing relatively well from an emotional standpoint. Anger management was in better control with the medication. He appeared "a bit more relaxed and had made a good adjustment to recent medication adjustments." (Doc.8-7 at 1).

On January 26, 2006, he reported that he was still depressed and moderately anxious, but was working maintenance about twenty hours per week. His GAF was 55-60. Id. at 13

At a February, 2006 visit with Cassidy, Chump was generally pleasant, cooperative, alert, oriented, and showed no signs of cognitive problems or thought disorder. He did not report problems with severe anxiety or depression. He was doing his best to work part-time and was making progress. He reported feeling better in general. His GAF was 55-60. Id. at 12.

13

and was consistent with applicable law, the Motion for Summary Judgment filed by the Commissioner should be granted, and the Motion filed by the claimant should be denied.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by April 3, 2007. Responses to objections are due by April 13, 2007.

March 13, 2007.

<u>/S/ Francis X. Caiazza</u>
Francis X. Caiazza
U.S. Magistrate Judge

cc:

Counsel of Record
Via electronic mail